El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
El peticionario Carlos Maisonet Correa (señor Maisonet o padre no custodio), quien aceptó su capacidad económica *556 para pagar la pensión de sus hijos, nos solicita que determi-nemos la forma correcta de adjudicar la aportación económica que le correspondería asumir a la persona custo-dia en estos casos. El recurso que hoy atendemos nos brinda la oportunidad de aclarar ciertos vacíos normativos que sur-gieron a raíz de la norma jurisprudencial que postula que los alimentantes que aceptan tener capacidad económica no están obligados a descubrir su información económica. Así también, nos expresamos en tomo a la jurisdicción del Tribunal de Primera Instancia para imponer una pensión en casos en que, al momento de la celebración de la vista evi-denciaría para ello, el menor ya ha alcanzado la mayoridad, pero continúa cursando estudios universitarios y no ha pre-sentado una petición de alimentos a nombre propio.
I
Los hechos de este caso son sencillos y sobre éstos no existe controversia.
La Sra. Marisol Santiago Texidor (madre custodia o se-ñora Santiago) y el señor Maisonet —divorciados en el 1994— procrearon dos hijos, quienes al momento de los hechos que originaron este pleito vivían bajo la custodia de la señora Santiago. Como parte de su obligación alimenta-ria, el señor Maisonet estuvo pagando una pensión de $1,200 mensuales a favor de los menores.(1)
Tiempo después —en el 2006— la señora Santiago, en representación de sus hijos, presentó ante el Tribunal de Primera Instancia (TPI) una moción sobre revisión de pen-sión alimentaria. Allí detalló que estos habían comenzado estudios universitarios, por lo que entendía que se debía modificar la pensión de acuerdo con sus nuevas necesidades. Durante ese trámite, también peticionó una orden para que el patrono del señor Maisonet proveyera *557 cierta información relacionada con los ingresos que este último devengaba. Así las cosas, más adelante, el señor Maisonet aceptó tener capacidad económica para satisfacer la pensión alimentaria que en su día otorgara el tribunal.
Luego de varios trámites procesales, se señaló la vista evidenciaría ante la Examinadora de Pensiones Alimenta-rias (EPA). Cabe mencionar que, si bien cuando la señora Santiago sometió la petición de modificación de alimentos ambos hijos eran menores de edad, al celebrarse la vista, la hija mayor de las partes había cumplido 21 años. Este he-cho quedó consignado en el informe que posteriormente rindió la EPA.
En esa audiencia, la señora Santiago reportó que deven-gaba un sueldo bruto de $9,939 y uno neto de $5,271 mensuales. Además, informó que incurría en los siguientes gastos para atender las necesidades de los menores: $985 mensuales en concepto de vivienda; $6,226.00 anuales en concepto de matrícula para educación; $929 como pago de un apartamento que compró para que se hospedaran sus hijos por motivo de estudios; $130correspondientes al pago de agua y luz para ese hospedaje; $50 para una compra semanal como gasto propio de hospedaje, y $1,208 en con-cepto de gastos de transportación.
Evaluada la prueba, la EPA emitió su informe, sugi-riendo una pensión de $3,741 mensuales, recomendación que posteriormente fue acogida por el TPI. Por dicha deci-sión, el alimentante solicitó que se determinaran hechos adicionales, entre estos, que no se consideró el ingreso de la señora Santiago al momento de calcular la pensión ali-mentaria y argüyó que se le impuso el pago del 100% de los gastos de sus hijos.
Atendidos los planteamientos enunciados, la EPA emitió un segundo informe en el que formuló, en lo pertinente, los hechos siguientes:
1. En cuanto a no considerar el ingreso de la madre no custo-dio, Véase Ch[é]vere v. Levis.
*558 2. De los gastos básicos solo se le imputó la participación de los menores, en la suplementaria se imput[ó] la totalidad. El padre asumió capacidad.
3. Los menores viven con su madre y se hospedan por razón de estudios en el Área Metropolitana. Apéndice de la Apela-ción, pág. 59.
Por consiguiente, la cantidad de pensión que se le or-denó pagar al alimentante permaneció inalterada. Nueva-mente, el TPI hizo suyas esas recomendaciones.
Inconforme, el señor Maisonet acudió al Tribunal de Apelaciones alegando que el TPI había errado al negarse a considerar los ingresos de la madre custodia sin imponerle a esta una participación monetaria en la obligación de ali-mentar a los hijos. También, apuntó que incidió al adjudi-car la pensión a favor de la hija mayor, a pesar de que esta había advenido a la mayoría de edad cuando se celebró la vista ante la EPA.
Atendido el recurso, el foro intermedio resolvió que el primer señalamiento era inmeritorio por cuanto el alimen-tante no había establecido en su recurso de apelación cuá-les eran los gastos totales de los menores, de manera que se pudiera entonces evaluar qué proporción de esos gastos representaba la pensión que se le fijó. Añadió que
[independientemente de ello, hay gastos que no forman parte de las determinaciones de hechos efectuadas por el TPI y que por lo tanto, no serían sufragados por el Apelante. De forma general, podemos mencionar, entre otros, gastos en la residen-cia principal por concepto de agua, luz, mantenimiento, telé-fono, contribuciones sobre la propiedad y alimentos. En rela-ción directa a los menores, los gastos de alimentos fuera del hogar, ropa, teléfono, internet, entretenimiento, visitas médi-cas, medicinas, libros, materiales de estudio, gasolina, mante-nimiento de auto, barbería, salón de belleza, estacionamiento, actividades extracurriculares. En ausencia del contexto total de los gastos de los menores, no podemos asumir, que la pen-sión fijada al Apelante cubre todos sus gastos y por lo tanto la Apelada no aporte nada. (Enfasis en el original). Apéndice de la Apelación, pág. 17.
En cuanto al asunto de la falta de jurisdicción del TPI,
*559 el Tribunal de Apelaciones indicó que cuando se celebró la vista ambos hijos eran menores. Por ello, adujo que el foro primario tenía la obligación de establecer una pensión para ellos, correspondiéndole entonces al alimentante soli-citar una modificación de pensión a esos efectos.
Inconforme con ese proceder, acude ante nos el señor Maisonet y nos señala que:
Primero: Erró el Honorable Tribunal de Apelaciones al confir-mar la decisión del Tribunal de Primera Instancia de negarse a considerar los ingresos de la madre custodia y no imponerle a esta una participación monetaria en la obligación de alimen-tar a los menores, contrario a lo resuelto en la mayoría de los paneles de ese tribunal.
Segundo: Erró el Honorable Tribunal de Apelaciones al confir-mar la decisión del Tribunal de Primera Instancia de estable-cer una pensión alimentaria para la hija mayor de las partes, a pesar de carecer ya para ese momento, de jurisdicción sobre la materia en cuanto a esta hija. Apelación, págs. 4-5.
Acogido el recurso como un certiorari, lo expedimos, en reconsideración.
II
Esta controversia requiere que pasemos juicio sobre elementos esenciales del derecho de alimentos en Puerto Rico. Como sabemos, los casos relacionados con alimentos están revestidos del más alto interés público, siendo el interés principal el bienestar del menor. Véanse: Toro Sotomayor v. Colón Cruz, 176 D.P.R. 528 (2009); Argüello v. Argüello, 155 D.P.R. 62, 70 (2001). Esto es así, puesto que forma parte de la política pública del gobierno de Puerto Rico que los padres o las personas legalmente responsables contribuyan a la manutención y al bienestar de sus hijos menores dependientes. Véase Art. 3 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 502 (Ley Núm. 5). Cabe mencionar *560 que esa política es de raigambre constitucional y se des-prende del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico.(2) Véanse: Toro Sotomayor v. Colón Cruz, supra; Argüello v. Argüello, supra; Chévere v. Levis, 150 D.P.R. 525 (2000); Rodríguez Avilés v. Rodríguez Beruff, 117 D.P.R. 616, 621 (1986). Pasemos, pues, a revisar las disposiciones de nuestra legislación civil que atienden esta materia.
En primer lugar, el Art. 142 del Código Civil de Puerto Rico define alimentos como todo lo indispensable para el sustento, la habitación, el vestido y la asistencia médica, según la posición social de la familia. 31 L.P.R.A. sec. 561. Ese término también comprende la educación e instrucción del alimentista, cuando este es menor de edad, íd. Extrapolamos esta norma por la vía judicial resolviendo que proseguir los estudios universitarios o vocacionales que se comenzaron durante la minoridad también forma parte de las necesidades alimentarias de un hijo, aun cuando este haya alcanzado la mayoridad. Véase Key Nieves v. Oyóla Nieves, 116 D.P.R. 261 (1985).
Sabemos que nuestro Código Civil proporciona dos artículos que señalan quiénes son las personas llamadas a alimentar a los hijos. Uno de estos es el Art. 153, que discute las facultades y los deberes de los padres con respecto a sus hijos por razón de la patria potestad. 31 L.P.R.A. sec. 601. Acorde con esta disposición, las madres y los padres tienen el deber de alimentar a sus hijos no emancipados, tenerlos en su compañía y educarlos con arreglo a su fortuna. Id. Por otro lado, el Art. 143 regula lo relacionado con los alimentos entre parientes. Allí se dis-pone que están obligados a darse alimentos recíprocamente, entre otros, los ascendientes y descendientes. 31 L.P.R.A. sec. 562(2). Ahora bien, es importante recalcar que el deber de alimentar a los hijos cuando estos son me *561 ñores de edad no está subordinado a uno u otro artículo del Código Civil, sino a la relación paternofilial legalmente establecida. Ché vere v. Levis, supra, pág. 539. Así lo expli-camos en el caso precitado cuando señalamos que
[(Independientemente de lo expresado a través de nuestra ju-risprudencia en torno a las fuentes de las cuales emana la obligación de alimentar, la obligación de alimentar a los hijos menores es resultado de la relación paterno-filial y surge desde el momento en que la paternidad o maternidad quedan esta-blecidos legalmente. Esto quiere decir que el padre y la madre legalmente establecidos como tales, tengan o no la patria po-testad o vivan o no en compañía de sus hijos menores, están obligados a velar por éstos y a proveerles alimento. El derecho de los menores a reclamar alimento, la obligación de los padres de proveerlos y la interpretación de los tribunales para conce-derlos deben estar enmarcados en la relación paterno-filial le-galmente establecida; no supeditada a uno u otro artículo del Código Civil. Claro está, la cuantía de pensión alimentaria se fijará tomando en consideración, no sólo la necesidad de los hijos menores, sino también la condición socioeconómica del padre alimentante.
Así, pues, el deber de alimentar, educar y criar a los hijos menores es como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circuns-tancias de su nacimiento. (Enfasis en el original). Id.
Expuesto lo anterior, procede que discutamos las normas que guían la forma como los obligados a alimentar deben cumplir su cometido. Según nos ilustra el Art. 146 de nuestro Código Civil, la pensión alimentaria que se otorgue seré. proporcional a los recursos de quien los da y a las necesidades de quien los recibe. 31 L.P.R.A. sec. 565. Véase, también, Llorens Becerra v. Mora Monteserín, 178 D.P.R. 1003, 1016 (2010). En ese mismo caso reiteramos que la determinación de la cuantía de alimentos corresponde al prudente arbitrio del juzgador, quien debe velar por que la cuantía que se establezca cumpla con el principio de proporcionalidad. Id. Véase, también, Guadalupe Viera v. Morell, 115 D.P.R. 4, 14 (1983). Por lo tanto, es claro que la obligación alimentaria recae en ambos pro- *562 genitores, quedando así obligados a contribuir de acuerdo con su fortuna a la manutención de sus hijos. En otras palabras, “ [1] a obligación es indivisible y aplica tanto al padre como a la madre...”. López v. Rodríguez, 121 D.P.R. 23, 29 (1988). Por lo tanto, una vez disuelto el vínculo matrimonial, se distribuye entre los padres el pago de una pensión en cantidad proporcional a su respectivo caudal. Toro Sotomayor v. Colón Cruz, supra, pág. 535. En ese úl-timo caso, también hicimos la salvedad que ya habíamos hecho años atrás en Mundo v. Cervoni, 115 D.P.R. 422 (1984), en cuanto a que la labor que un progenitor realiza en el hogar cuando administra la pensión que el alimen-tante aporta se considera un descargo de su propia obliga-ción de alimentar. Toro Sotomayor v. Colón Cruz, supra, pág. 535.
Como parte del esquema dirigido a uniformar ese principio de proporcionalidad, se aprobó en Puerto Rico la Ley Núm. 5, supra. Esta es la legislación especial que hace viable la política pública del Estado procurando que las personas legalmente responsables contribuyan, en la medida que sus recursos lo permitan, a la manutención y el bienestar de sus hijos o dependientes. El legislador manifestó que, en muchas ocasiones, “el alimentante incumplidor tiene la capacidad económica para satisfacer su obligación”. 8 L.P.R.A. sec. 502. Según explicaremos más adelante, en Chévere v. Levis, supra, pág. 543, mencionamos que por esa razón ciertos preceptos de la Ley Num. 5 se dirigen más bien a aquellas personas que tienen la obligación de alimentar, pero que a pesar de ello se niegan a cumplir con su responsabilidad.
Para fortalecer los sistemas judiciales y agilizar así los procedimientos de reclamación de alimentos, esa pieza le-gislativa ordenó que se prepararan y adoptaran unas guías que ayudaran a determinar y modificar las pensiones ali-mentarias de manera uniforme en conformidad con las fa-cilidades económicas de cada progenitor y las necesidades *563 y aptitudes educacionales del alimentista. 8 L.P.R.A. sec. 518. Ese mandato surge como consecuencia del Family Support Act de 1988(3) promulgada por el Congreso de Es-tados Unidos que requiere a todos los estados implantar guías mínimas específicas para determinar la pensión alimentaria. S.E. Torres Peralta, El derecho alimentario en Puerto Rico, San Juan, Pubs. STP, 2007, T. 1, pág. 4.03. El requerimiento de esa reglamentación tuvo el propósito de hacer más consistentes las pensiones que se otorgaban, creando así un sistema justo. L. Raatjes, High-Income Child Support Guidelines: Harmonizing the need for Limits with the best interest of the child. 86 Chi-Kent L. Rev. 324 (2011). A pesar de que los estados utilizaron modelos económicos diferentes para confeccionar sus guías, estas tendieron a ofrecer pensiones más uniformes que las que se adjudicaron previo a la existencia de estas. Id. De esa forma, se pusieron en vigor en Puerto Rico las Guías para determinar y modificar las pensiones alimentarias en Puerto Rico(4) (Guías), uniformando así y facilitando el cálculo de las pensiones para menores a base de criterios y números descriptivos. 8 L.P.R.A. sec. 518. Dentro del pro-ceso evaluativo de las Guías se toma en consideración el ingreso de ambos padres, puesto que cada uno tiene la obli-gación legal de aportar para la manutención de sus hijos. Llorens Becerra v. Mora Monteserín, supra, pág. 1018. Ex-ploremos brevemente los mecanismos dispuestos en esta reglamentación.
Las Guías proveen para el cálculo de dos tipos de pensiones alimentarias: la básica y la suplementaria. En el Art. 4(27) de las Guías se define la primera como la participación del ingreso neto de la persona no custodia que se dedica al pago de los gastos mínimos en que se incurre *564 para la crianza del alimentista. Estos gastos incluyen aquellos en concepto de alimentación, utilidades, transpor-tación, entretenimiento y vestimenta, excepto los gastos de uniforme. Para arribar a ese cálculo, el Art. 7(A)(3) de ese reglamento alude a la “tasa”, que es la “[p]roporción por la cual se multiplica el ingreso neto de la persona no custodia para obtener la pensión alimentaria básica que [e]esta de-berá pagar”. Art. 4(38) de las Guías. Por su parte, los gas-tos suplementarios son aquellos que “tanto la persona no custodia como la persona custodia deben sufragar para sa-tisfacer las necesidades del/la alimentista que no se con-templan en la pensión alimentaria básica”. Art. 4(14) de las Guías. Entre estos figuran los gastos de educación y de vivienda. Entonces, por definición, la “pensión alimentaria suplementaria” es la “[p]roporción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponde por concepto de gastos suplementarios”. Art. 4(30) de las Guías.
Todo lo mencionado cumple la función de establecer de manera proporcional la aportación monetaria que cada padre debe asumir para suplir las necesidades de sus hijos menores de edad. Para ello, es indispensable un descubri-miento de prueba amplio y compulsorio tendente a descu-brir la situación económica, tanto de la parte alimentante como la del alimentista. Art. 16 de la Ley Núm. 5, supra, 8 L.P.R.A. sec. 515. Ahora bien, a partir de Chévere v. Levis, supra, pautamos una norma que cambió el cómputo de las pensiones alimentarias en algunos casos particulares. Veamos.
En Chévere v. Levis, supra, el alimentante solicitó una orden protectora luego de que se le cursara un requeri-miento de información para que descubriera su capacidad económica y su estilo de vida a fin de fijar la pensión ali-mentaria que debía pagar. Hizo lo anterior, ya que enten-día que ello era improcedente puesto que había admitido que poseía la capacidad económica suficiente para satisfa-cer el pago de la pensión que en su día se impusiera. Pro- *565 nunciamos en ese caso que es precisamente la negativa a cumplir con la obligación a alimentar lo que activa el des-cubrimiento de prueba relacionado con los ingresos para determinar la suficiencia de pago del alimentante. Id., pág. 543. Consecuentemente, dijimos que
... cuando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimien-tos en cuanto a la otorgación de pensiones alimentarias. Por consiguiente, cuando el padre alimentante acepta su capaci-dad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley. (Énfasis en el original). íd., pág. 544.
Al ser así, resolvimos que quedaría pendiente únicamente determinar las necesidades económicas del alimentista para fijar la pensión alimentaria que le correspondería pagar a quien aceptó la capacidad económica.
[AJceptada la capacidad económica del padre, sólo resta que el tribunal determine la suma justa y razonable en concepto de pensión alimentaria para los menores... con relación a sus ne-cesidades y la situación económica de la madre. Esto, sin embargo, no exime al señor Levis de descubrir cualquier prueba que sea necesaria para que el tribunal pueda cumplir con su deber de fijar la pensión alimentaria que proceda de acuerdo con las necesidades particulares de los menores en este caso y conforme a la particular condición socioeconómica del padre. (Énfasis nuestro). Id., pág. 545.
Conforme a esa norma, dictaminamos que en estos ca-sos el alimentante no podrá impugnar la pensión que se estableció conforme a las necesidades de los alimentistas alegando que no tiene capacidad económica para pagarla. Téngase presente que esa prohibición no se refiere a que no se pueda impugnar la cuantía de la pensión porque resulte contraria a la prueba o porque sea irrazonable a la luz de las necesidades de los menores.
Poco tiempo después resolvimos Chévere Mouriño v. Levis Goldstein, 152 D.P.R. 492 (2000), secuela *566 del caso anterior. Allí nos enfrentamos a la controversia de dictar cuáles eran las necesidades de los menores cuando el padre alimentante había aceptado su capacidad econó-mica para pagar la pensión que correspondiera. Así, pro-nunciamos que en esos casos la pensión alimentaria se fi-jará de acuerdo con los preceptos del Código Civil contenidos en los Arts. 153, 146 y 142, supra, y tomando en consideración la condición económica y el estilo de vida del alimentante, en unión a las necesidades de los alimentis-tas, incluyendo en estas el estilo de vida al cual estaban acostumbrados. Id., pág. 505. Indicamos que, para adjudi-car esto, un tribunal no necesita sopesar evidencia directa sobre los gastos e ingresos, sino que puede valerse de la evidencia circunstancial atinente al estilo de vida al que tiene derecho el menor conforme al estilo de vida que man-tiene el alimentante. Id.
Algunos años después, esta normativa referente al estilo de vida del alimentante trajo la polémica que se suscitó en Ferrer v. González, 162 D.P.R. 172 (2004). Allí resolvimos que no procedía descubrir prueba sobre la condición económica de un alimentante que aceptó capacidad económica para determinar cuál era su estilo de vida y así poder determinar los gastos razonables de los menores. Además, mencionamos que en estos casos “sólo restaría determinar las necesidades del menor y la capacidad económica de la madre para fijar la cuantía a la que se está obligado a pagar en concepto de alimentos”. Id., pág. 181.
III
Expuesto el marco doctrinal que precede, pasemos a examinar el primer error señalado en el recurso de epígrafe.
En este caso, el señor Maisonet aceptó tener capacidad económica para pagar la pensión de sus hijos. Sin embargo, luego que se adjudicó la cantidad que le correspon- *567 día pagar, alegó que la madre debía asumir el pago de una parte de ésta. En otras palabras, nos solicita que justipre-ciemos cuál es la proporción con la cual debe contribuir la persona custodia en la pensión que se determinó a base de las necesidades razonables de los menores. El peticionario parte del supuesto de que es contrario a derecho imponerle a un solo padre el pago de la totalidad de esos gastos. Es claro que la obligación alimentaria recae sobre ambos progenitores. Eso se deduce tanto del Código Civil como de la Ley Núm. 5, supra, y de nuestras decisiones jurisprudenciales. Sobre ello no hay controversia. Ahora bien, ¿de qué manera podemos conciliar la solicitud del se-ñor Maisonet con la norma que se estableció en Chévere v. Levis, supra, que permite que en nuestra jurisdicción un alimentante que acepta poseer capacidad económica no divulgue información sobre sus ingresos? Atendamos este particular.
Para sopesar la solicitud del señor Maisonet debemos explorar algo básico: la definición de la voz proporción. Se-gún el diccionario de la Real Academia Española,(5) este término significa “ [d]isposición, conformidad o correspon-dencia debida de las partes de una cosa con el todo o entre cosas relacionadas entre sí”. En su vertiente aritmética, representa la “igualdad de dos razones”.
Como hemos visto, la idea de proporcionalidad permea toda nuestra legislación alimentaria. Así, por ejemplo, el Art. 146 del Código Civil, supra, señala que la cuantía de alimentos será proporcional a los recursos de quien los da y a las necesidades de quien los recibe. Por otro lado, en la declaración de la política pública de la Ley Núm. 5, supra, se expresa que el Estado debe procurar que las personas legalmente responsables contribuyan a la manutención de los hijos en la medida en que sus haberes económicos lo permitan. Así también, las definiciones que ofrecen las *568 Guías para la pensión alimentaria básica y suplementaria aluden a la proporción o participación con la que debe aportar cada alimentante para alimentar a su hijo.
En cuanto a establecer la proporción de los gastos ali-mentarios que debe aportar cada padre y madre, los casos de alimentos que se tramitan utilizando las Guías no pre-sentan gran complicación. Esto es así puesto que las Guías se crearon a base de criterios numéricos que permiten lle-gar a cálculos uniformes de acuerdo con los ingresos de la persona custodia, así como de la no custodia. Nos sugiere el señor Maisonet que utilicemos esa reglamentación para imponerle a la señora Santiago la proporción monetaria que debe aportar para satisfacer las necesidades razona-bles de los menores que determinó la EPA. Al analizar el esquema de las Guías, es ineludible concluir que esa suge-rencia es improcedente. Nos explicamos.
Por su propia definición, la pensión alimentaria básica implica la participación del ingreso neto de la persona no custodia que se destina para satisfacer las necesidades bá-sicas del alimentista menor de edad. Esa participación se obtiene multiplicando el ingreso neto de la persona no cus-todia por un valor numérico denominado “tasa”, el cual fue creado específicamente para calcular la aportación econó-mica que debe sufragar el progenitor que no vive con sus hijos. Por lo tanto, se deduce que ese cálculo no existe para obtener la aportación económica que debe sufragar la ma-dre o el padre custodio cuando, como en este caso, el ali-mentante ha aceptado capacidad económica y no ha divul-gado sus ingresos. De otra parte, las Guías consideran también el cómputo de una pensión alimentaria suplementaria. La fórmula matemática para ese compo-nente utiliza como factores de su ecuación los ingresos ne-tos de ambos progenitores, esto es, del custodio y del no custodio. Si bien los gastos suplementarios no se conside-ran en la pensión alimentaria básica, nuevamente, se hace imposible realizar esa operación aritmética para atribuir *569 porciento alguno de esa pensión suplementaria a la persona custodia. Esto es así por cuanto desconocemos en este caso cuál es el ingreso de la persona no custodia.
Como vemos, la razón por la cual es improcedente utili-zar las Guías para acceder a la petición del señor Maisonet es porque las utilizaríamos para un propósito para el que no fueron creadas y, además, porque esto requeriría cono-cer los ingresos de ambos progenitores. Ante ello, tanto por su fin como por su mecanismo, las Guías son inaplicables al caso que atendemos. No procede utilizar los menciona-dos procedimientos para obtener la proporción a base de la cual debe aportar la persona custodia en los gastos razona-bles de los menores cuando el alimentante ha aceptado su capacidad económica y no descubre sus ingresos.
A pesar de lo anterior, tanto Chévere v. Levis, supra, como Ferrer v. González, supra, puntualizaron que una vez la persona no custodia acepta su capacidad económica, solo resta determinar las necesidades razonables de los meno-res y la capacidad económica de la persona custodia. Sin embargo, surge la interrogante siguiente: ¿cómo llegamos al porcentaje que le corresponde aportar a cada uno de ellos si desconocemos el valor de una de las partes de la ecuación? La variable desconocida en ese cómputo es el ingreso del señor Maisonet. Siendo ello así, este nos invita a que adoptemos una fórmula para llegar a ese resultado. No obstante, esa petición queda fuera de nuestros límites adjudicativos. En ausencia de pronunciamiento legislativo alguno, estamos impedidos de diseñar algún esquema o re-glamentación a esos efectos.
Debemos, pues, determinar cómo se adjudica el porcen-taje de gastos que le corresponde aportar a la señora Santiago tomando en consideración las limitaciones que hemos discutido anteriormente. Al hacer esto, reconocemos el valor de la norma de aceptación de capacidad económica y los propósitos y objetivos que la norma cumple. Como ya men-cionamos, esta contribuye significativamente a adelantar *570 el proceso de descubrimiento de prueba evitando trabas procesales que puedan retrasar la adjudicación final de la pensión. También, debemos tomar en cuenta una solución que sea justa para ambas partes y que no vaya en detri-mento de los axiomas que rigen el derecho de alimentos en Puerto Rico. Examinado nuestro estado de derecho, resol-vamos esta controversia.
En el caso ante nuestra consideración, el peticionario aceptó tener capacidad económica para pagar los gastos razonables de sus hijos. Al ser esto así, la jurisprudencia establece un esquema para fijar la pensión distinto a aquel que se sigue mediante las Guías. No se utiliza la propor-ción de los ingresos para ese cálculo, sino que la persona custodia está obligada a establecer cuáles son los gastos razonables de los menores para determinar así cuánto debe aportar la persona no custodia en cuanto a esos gastos.
Debemos tomar en consideración que en estos casos la persona custodia no escoge participar en este tipo de cál-culo de pensión. Recordemos que quien aceptó capacidad económica fue el aquí peticionario. Contrario al señor Mai-sonet, en la vista evidenciara la señora Santiago descubrió sus ingresos. Conforme al derecho aplicable, se estableció la pensión según las necesidades razonables de los meno-res y el estilo de vida del alimentante que los menores tienen derecho a disfrutar. Para determinar ese estilo de vida no se permite descubrimiento de prueba sobre los in-gresos y gastos del alimentante. La persona custodia puede presentar prueba circunstancial o directa que se dirija a ello, pero sin indagar en evidencia que tienda a descubrir su estado económico. En ese sentido, la pensión se esta-blece conforme al prudente arbitrio del juzgador en cuanto a la prueba de las necesidades de los alimentistas.
Así pues, surge un problema en este caso para calcular la participación que le corresponde aportar al padre y a la madre en cuanto a los gastos razonables de los menores y *571 poder establecer la pensión que en derecho procede, es de-cir, una pensión que sea proporcional a la fortuna de todos los obligados a alimentar. Para poder hacer ese cálculo te-nemos ante nosotros dos variables desconocidas: (1) el por-ciento de participación de la persona no custodia y (2) los ingresos de esta para poder adjudicar esa proporción. Por lo tanto, resulta imposible adjudicar una participación por-centual justa al desconocerse los ingresos de una de las partes. En otras palabras, no es posible establecer el cóm-puto entre el total de los gastos razonables y los ingresos si la fortuna de una de las partes es desconocida. Por lo tanto, imputar a la señora Santiago una parte de los gastos razo-nables de los menores desconociendo aún los ingresos del señor Maisonet implicaría tener que establecer una propor-ción arbitraria. Es decir, resultaría injusto y arbitrario ad-judicarle a la persona custodia el pago de una proporción de la pensión alimentaria que se fijó a favor de los menores ante las particularidades propias de los casos en los que el alimentante acepta capacidad económica, pues llegaríamos a una determinación que no estaría basada en criterios numéricos. Esto significaría un retroceso a la situación que las Guías intentaron remediar y a su propósito de fijar pensiones alimentarias uniformes y justas para las partes.
En atención a lo anterior, resolvemos que, en casos en los que el alimentante acepta su capacidad económica, procede entonces que el alimentante pague el 100% de los gastos razonables de los menores. Si este quiere que se le imponga pagar solo una proporción de los gastos bajo el fundamento de que la persona custodia también debe realizar una aportación, por imperativos de justicia y de principios matemáticos básicos, deberá divulgar sus ingresos a fin de utilizar las Guías y poder adjudicar la participación correspondiente a la madre y al padre.(6)
*572 Por todo lo enunciado, concluimos que no erró el foro apelativo al confirmar la suma que se le ordenó pagar al señor Maisonet. No obstante, sí erró al dictaminar que a este no se le ordenó el pago de la totalidad de los gastos de los menores por cuanto, a su entender, existían otros gas-tos sobre los que la EPA no adjudicó. Las necesidades ra-zonables de los menores son aquellas que la parte alimen-tista logró probar durante la vista evidenciaría. Considerar la existencia de posibles gastos que no se reclamaron ni se probaron ante la EPA constituye un error de derecho y un abuso de discreción.
IV
Pasemos ahora a dirimir el segundo error planteado por el peticionario. En este nos solicita que resolvamos si el TPI carecía de jurisdicción para avalar la pensión alimen-taria que recomendó la EPA en cuanto a la hija que, al momento de la vista evidenciaría, advino a la mayoría de edad. Arguye el padre alimentante que ese hecho privaba a la EPA de recomendar una pensión alimentaria que tu-viera vigor más allá de la fecha cuando ella cumplió 21 años. Apunta que en nuestro ordenamiento jurídico no se considera que una pensión continúe en vigor automática-mente después de que el alimentista ya no es un menor de edad.(7)
Sabemos que mientras los hijos son menores de edad y no se han emancipado, ya sea por razón de matrimonio o por dictamen judicial, el progenitor custodio con patria potestad está capacitado para reclamar alimentos en beneficio de estos. Toro Sotomayor v. Colón Cruz, supra, *573 pág. 535. En esos casos, aunque es el padre custodio o la madre custodia quien presenta la acción, la acción perte-nece al hijo, es decir, el padre o la madre demandante que la inició solo actúa como un representante. íd., pág. 536. Ahora bien, una vez cesa esa incapacidad por minoridad, los padres ya no pueden acudir a los tribunales a represen-tar los intereses de sus hijos. En tal caso, el hijo ya mayor de edad se encuentra revestido de la capacidad jurídica necesaria para hacerlo.(8) Id.
Como sabemos, el hecho de que los hijos puedan comparecer a solicitar alimentos aun luego de alcanzar la mayoridad obedece a que la obligación de alimentarlos no cesa automáticamente porque estos hayan cumplido 21 años. Toro Sotomayor v. Colón Cruz, supra; Key Nieves v. Oyola Nieves, supra. En otras palabras, la emancipación por mayoría de edad no apareja ipso facto la pérdida del derecho a reclamar alimentos de los padres, pues siempre subsistirá la obligación que emana del Art. 143 del Código Civil, supra, que atiende las necesidades alimentarias entre parientes. No obstante, ese tipo de obligación requiere que el hijo ya mayor de edad tenga la necesidad de esa pensión alimentaria, lo que se analiza según criterios distintos a los que se toman en cuenta cuando se adjudican los alimentos de un menor. Véanse: Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785 (1993); Sosa Rodríguez v. Rivas Sariego, 105 D.P.R. 518 (1976). Por lo tanto, el hijo mayor de edad está obligado a probar las circunstancias que le hacen acreedor de los alimentos.
En cuanto a los hechos específicos de este caso, ya desde Guadalupe Viera v. Morell, supra, pág. 14, atendiendo al comentario de varios tratadistas,(9) mencionamos *574 que la enumeración que provee el Código Civil en cuanto a la definición de “alimentos” no debía entenderse tan irres-tricta, de modo que no le permitiera al hijo que había ini-ciado un oficio o carrera durante su minoridad el derecho a exigir alimentos a sus padres para poder completarlos, aún después haber llegado a la mayoridad. Partiendo de lo anterior, en Key Nieves v. Oyola Nieves, supra, pág. 266, rei-teramos que el deber legal de todo padre o madre de pro-porcionar alimentos a sus hijos para su educación, conforme al Art. 143, supra, no podía cesar meramente por el hecho de que ese alimentista hubiese alcanzado la mayoría de edad. Id. Véase, también, Argüello v. Argüello, supra. Pronunciamos que, bajo circunstancias “normales”, es decir, sujeto a los resultados, diligencia y continuidad observada en los estudios, un hijo que comenzó durante su minoridad sus estudios de bachillerato tiene derecho a exi-gir alimentos de sus padres para obtener ese grado académico. En cuanto a la adjudicación de alimentos para completar estudios de posgrado, resolvimos que estos se adjudicarían de acuerdo con las circunstancias de cada caso.(10) Key Nieves v. Oyola Nieves, supra, pág. 267. Por economía procesal, dijimos en ese mismo caso que este tipo de alimentos podía reclamarse dentro del pleito original de divorcio entre los padres.(11) íd., pág. 268.
A la luz de esta normativa, recapitulemos los hechos pertinentes a la controversia que atendemos. La madre custodia, en representación de sus hijos menores de edad, *575 solicitó que se modificara la pensión alimentaria que estos recibían. Para ese momento, por ser menores, ella tenía plena autoridad —además del deber— de representarlos en esa acción. Ahora bien, en el ínterin del caso, al mo-mento de celebrarse la vista evidenciaría, la hija de las partes cumplió 21 años. No consta en el expediente que esta joven hubiese comparecido por sí misma, luego de esa fecha, a solicitar alimentos. En ese contexto, debemos con-testar la siguiente interrogante: ¿el hecho de que la hija alcanzó la mayoría de edad implica que quedó automática-mente desprovista de pensión alimentaria? Respondemos en la negativa.
Lo expuesto no conlleva el cese automático de la pensión alimentaria que respondía a las necesidades de esa hija durante su minoridad. La pensión así fijada no cesa automáticamente porque la menor haya alcanzado la mayoría de edad. Recordemos que, una vez se establece la pensión alimentaria que se solicitó durante la minoría de edad de un alimentista, el tribunal no puede reducir la pensión establecida sin que se haya presentado una petición a tales efectos. Véanse: Valencia, Ex parte, 116 D.P.R. 909, 916 (1986); 8 L.P.R.A. sec. 518. Además, atendamos a los hechos que presenta este caso. Aquí la hija de las partes, mientras era menor de edad, comenzó estudios universitarios y cumplió 21 años sin culminarlos. Esto ocurrió mientras se dilucidaba la solicitud de revisión de pensión alimentaria, la cual presentó la madre custodia precisamente porque tales estudios variaron las necesidades de sus hijos. El hecho de que esa hija llegara a la mayoría de edad no detuvo las necesidades que apareja ser una joven estudiante que aún no ostenta un grado académico para entrar al mercado laboral.
Por lo tanto, sin perder de perspectiva que la pensión alimentaria que se otorga a favor de un menor de edad responde a este hecho y, además, que la pensión que se adjudica conforme al Art. 143 del Código Civil, supra, se *576 rige por criterios diferentes, sostenemos que la pensión ali-mentaria no cesa automáticamente al momento de cumplir la mayoridad. De ser lo contrario, se crearía una situación sumamente tortuosa para los jóvenes involucrados en esa acción. No podemos avalar que arbitrariamente un alimen-tante suspenda su obligación de pagar una pensión alimen-taria por el hecho de que el alimentista advenga a la ma-yoría de edad.
Debido a lo anterior, resolvemos que es deber del ali-mentante, si es que así lo desea, poner en conocimiento al tribunal de que sus hijos alimentistas están próximos a llegar a la mayoridad y su interés de que se le releve del pago de la pensión alimentaria. Es decir, la pensión otor-gada a un menor de edad continuará en vigor —aunque advenga a la mayoría de edad— hasta que no se realice el trámite procesal descrito anteriormente. Esa moción se le deberá notificar al alimentista, de modo que este pueda comparecer dentro de ese mismo pleito —a nombre pro-pio— y establecer que sus necesidades permanecen vigen-tes y que reúne los requisitos que le hacen acreedor de la pensión a pesar de que ya es mayor de edad. Entonces, solo restará que el tribunal, tomando en consideración las cir-cunstancias particulares de cada caso, evalúe si procede relevar al padre alimentante de la obligación que se le ha-bía impuesto hasta ese momento. Es decir, una vez se ha puesto en conocimiento al tribunal de que un alimentista está próximo a llegar a la mayoridad, y este último, a su vez, ha informado que por su condición de estudiante aún necesita alimentos, el foro primario deberá calendarizar una vista evidenciaria para pasar juicio sobre los requeri-mientos de las partes. Por estas razones, será imperativo que el tribunal atienda con premura estos planteamientos para evitar un daño irreparable a cualquiera de las partes.
Por las razones previamente expuestas, resolvemos que el foro primario no cometió el error que señala el peticionario.
*577 V
Por los fundamentos antes esbozados, se confirma, aunque por distintos fundamentos, la sentencia recurrida. Resolvemos que, en los casos en que un alimentante acepte tener capacidad económica, este debe descubrir sus ingresos si interesa que se le imponga a la persona custodia el pago de una proporción de los gastos de los menores. Esto no deroga la norma establecida en Chévere v. Levis, supra. Más bien la aclaramos para pautar que en tal situación el alimentante que aceptó su capacidad económica para no descubrir información financiera estará obligado a pagar el 100% de los gastos razonables de los menores, ya que el desconocimiento de sus ingresos impide que, a base de criterios numéricos, se le ordene a la persona custodia asumir el pago de un porcentaje de tales gastos. Por otro lado, se devuelve el caso al TPIpara la continuación de los procedimientos acorde con lo aquí resuelto.

Se dictará sentencia de conformidad.

 Esta pensión surge de la Resolución que decreta el divorcio por consenti-miento mutuo. Véase Apéndice de la Apelación, pág. 96.

 Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1.

 Pub. L. No. 100-485, 102 Stat. 2343, 42 U.S.C.A. sec. 667(a).

 Guías para determinar y modificar las pensiones alimentarias en Puerto Rico, Reglamento Núm. 7135 de la Administración para el Sustento de Menores, Departamento de la Familia, 24 de abril de 2006 (Guías).

 Diccionario de la lengua española, 22da ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 1846.

 En todo caso, no debemos olvidar que la propia Ley Orgánica de la Adminis-tración para el Sustento de Menores preceptúa que en caso de que el adjudicador determine que aplicar las Guías puede resultar en una pensión injusta, irrazonable *572 o inadecuada, se determinará la pensión considerando entonces ciertos factores, en-tre estos, los recursos económicos del padre y de la madre, las aportaciones no mo-netarias de cada uno de estos al cuidado del menor y las necesidades y aptitudes educacionales o vocacionales. 8 L.P.R.A. sec. 518(b).

 Véase Alegato del apelante, pág. 16.

 Véase, también, Ríos Rosario v. Vidal Ramos, 134 D.P.R. 3, 10 (1993), donde se especifica que en Puerto Rico no existe la posibilidad de la patria potestad exten-dida tras la mayoridad.

 J.M. Manresa, Comentarios al Código Civil español, Madrid, Ed. Reus, 1956, T. 1, pág. 791; F. Puig Peña, Compendio de Derecho Civil español, Madrid, Eds. *574 Pirámide, 1976, T. V, pág. 501.

 Estos alimentos se otorgarán conforme al Art. 146 del Código Civil, 31 L.P.R.A. sec. 565, y el hijo tiene que demostrar, entre otras cosas, que es acreedor a esa asistencia económica, que el objetivo deseado es razonable y que tiene buena aptitud en los estudios. Además, tendrán prioridad en cuanto a alimentos aquellos hijos que aún son menores de edad. Véase Key Nieves v. Oyóla Nieves, 116 D.P.R. 261, 267 (1985).

 Véase, también, Ríos Rosario v. Vidal Ramos, supra, pág. 12, donde se resuelve que la acción promovida por una madre o por un padre en representación de sus hijos ya mayores de edad, para reclamar el pago de pensiones alimentarias, debe sujetarse a la oportuna intervención o sustitución del alimentista, quien es la parte realmente interesada.